Charles Goodwin et al., Respondents, *v.* The Baltimore and Ohio Railroad Company, Appellant.

Where bulky articles of freight are landed from a vessel in the customary manner upon a public wharf, with due notice to the consignee (he being the owner), who pays the freight and takes steps toward removing them, and is afforded a reasonable opportunity of doing so, the legal custody is transferred to him, and if he unnecessarily delays the removal, he does so at his own risk. It is his duty, not the carrier's, to protect them, and if they are injured by inclement weather, the carrier cannot be held responsible.

(Argued April 19, 1872; decided November 12, 1872.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff entered upon a verdict. (Reported below, 58 Barb., 195.)

The action is brought to recover damages alleged to have been sustained by the plaintiffs, through the negligence of defendant, in not caring for and protecting from rain a lot of sheet iron consigned to plaintiffs, which had been brought from Baltimore in the steamer Carrol, belonging to the defendant.

The Carrol arrived at her wharf, pier No. 13, East river, on the 4th or 5th of September, and immediately sent notice to the plaintiffs, whose store was less than eighty rods distant from the pier, and landed the iron on the pier in the usual way in which iron is landed. A part of the iron was piled

on the side of the pier near the street (South street), and the residue in two piles at the south-easterly end of the pier. It was piled in a space by itself, and separate from all other cargo. That part which lay near the street was taken away by the plaintiffs.

The vessel began discharging freight Monday and finished Wednesday. On Friday a heavy shower occurred, by which the iron was wet and rusted. The iron could have been removed in one day. Other facts appear in the opinion.

*John Slosson* and *A. J. Parker* for the appellant. The judge erred in his charge to the jury, in making the convenience of access to the goods a test of perfect delivery. (Ang. on Carriers, §§ 313, 315; *Fisk* v. *Newton*, 1 Den., 45; *Richardson* v. *Goddard*, 23 How. U. S., 39; *Miller* v. *Steam Manufacturing Co.*, 6 Seld., 438; *Ely* v. *N. Haven St. Bt. Co.*, 52 Barb., 214, 215; *Price* v. *Powell*, 3 Coms., 322; Flanders on Shipping, § 275; *Hyde* v. *Trent. Nav. Co.*, 5 T. R., 397–400; *Redmond* v. *Liverpool, N. Y. and Phila. Steamship Co.*, Court of Appeals [N. Y. Transcript, March 30, 1872]). After receiving notice, the consignee is bound to take care of the goods and carry them away. (Story on Bail., § 545, citing, 4 Pick., 371, 1 Rawle, 203; *Roth* v. *Buff. and S. L. R. R.*, 34 N. Y., 553; *Richardson* v. *Goddard*, 23 How. U. S., 39.) The judge erred in refusing to charge that defendant was not obliged to warehouse the goods. (*Roth* v. *Buff. and S. L. R. R.*, 34 N. Y., 548; *Gould* v. *Chapin*, 20 id., 267; *Miller* v. *Steam Manuf. Co.*, 10 id., 438; *Fisk* v. *Newton*, 1 Den., 45; *Ostrander* v. *Brown*, 15 J. R., 39.) Gratuitous bailees are only responsible for gross or culpable negligence. (Jones on Bail., 8; *Tompkins* v. *Saltmarsh*, 14 S. & R., 275; Ang. on Carriers, §§ 17, 26, 295, 304, 323; *Shiells* v. *Blackburne*, 1 H. Black., 158.)

*C. M. Briggs* for the respondents.

RAPALLO, J. Where bulky articles of freight are landed from a vessel in the customary manner upon a public wharf,

with due notice to the consignee, and he thereupon pays the freight and takes steps toward removing them, and is afforded a reasonable opportunity to do so, but unnecessarily delays that operation, and in consequence of such delay on his part they are injured by inclement weather, the carrier cannot be held responsible for such injury. It is not his duty to store the goods after the consignee has paid the freight and signified his intention to remove them, and is apparently about to do so. If, after the consignment has been thus accepted and the goods have been separated from the rest of the cargo and the consignee has been afforded a reasonable time to remove them, he voluntarily or negligently allows them to remain upon the wharf, he does so at his own risk, and it is his duty and not the carrier's to protect them from the weather.

Where, instead of being landed upon a public wharf, the goods are placed in a depot or storehouse or other premises of the carrier, they being in his actual custody, he is bound to take ordinary care of them, notwithstanding unreasonable delay by the consignee in removing them. And where the consignee cannot be found, or after notice refuses to receive the goods, the carrier is bound to take care of them or put them in a place of safety for the benefit of the consignor or owner.

In all these cases, after his duty as carrier has been discharged, he becomes a species of involuntary bailee, and his only means of relieving himself of the custody of the goods is by placing them in the hands of some responsible warehouseman.

But the principle of these cases does not apply where the consignee is present, accepts the consignment and pays the freight, and the goods are landed on a public wharf, with notice to him, and he is afforded a reasonable time and opportunity to take charge of and remove them. Their legal custody is then transferred from the carrier to the consignee, at least where the latter is owner of the goods, or bound to accept them. (*Chickering* v. *Fowler*, 4 Pick., 371; *Cope* v.

*Cordova*, 1 Rawle, 203.) Whether in a case where the consignee was not the owner the carrier would owe any further duty to the true owner in case of the neglect of the consignee to remove the goods, it is not now necessary to consider, this action being between the carrier and the consignees.

In the present case, the parcel of sheet iron in question lay separated from the rest of the cargo and piled up by itself at the end of the pier (which was a public wharf), for several days after notice to the consignees of its arrival. They had paid the freight upon it at the time of receiving the notice, and had sent their carman several times to remove it and had removed another parcel of the same consignment. The main contest at the trial was upon the point whether a reasonable opportunity had been afforded to the plaintiffs to remove the parcel in question, before the storm by which it was injured, the claim upon the part of the plaintiffs being that the defendant had so obstructed the wharf with other portions of the cargo that the carman could not remove the parcel in question before the storm, and the defendant controverting this and claiming that the omission of the carman to remove it was owing to his own negligence and misconduct, and that with proper diligence he had ample time to remove it before the damage occurred. The evidence upon these points was conflicting, and they were submitted to the jury. The judge in the first instance complied with the request of the defendant's counsel to charge the jury that if the plaintiffs had a reasonable time to remove the iron or to put it under proper care and custody before the storm they could not recover, but afterward, in delivering his charge, the judge departed from this view and charged in substance that even if the plaintiffs had a reasonable time, then from the time that the reasonable period for the removal of the goods expired the defendant became liable as warehouseman, and that if proved to have neglected to take that degree of care of the property which is required of warehousemen, it was liable, though its duty as common carrier was ended. For the reasons above stated, we are of opinion that under the circumstances of this case, the lat-

ter instruction was erroneous, and that the judge should have adhered to the first position.

The judgment must therefore be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed and new trial granted, costs to abide the event.